# In the United States Court of Federal Claims

No. 18-536 C
Filed: November 28, 2018

| | |
|---|---|
| C & L GROUP, LLC, and MAKKO CONSTRUCTION, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 11 U.S.C. § 365(a) (Bankruptcy, Executory Contracts And Unexpired Leases);<br>28 U.S.C. § 1491(a)(1) (Tucker Act Jurisdiction);<br>Implied-In-Fact Contract;<br>Privity Of Contract;<br>RCFC 12(b)(1) (Lack Of Subject Matter Jurisdiction). |

**Charles A. Cuprill**, Charles A. Cuprill, PSC Law Offices, San Juan, Puerto Rico, Counsel for Plaintiff.

**Sonia Williams Murphy**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS

**BRADEN**, *Senior Judge.*

## I. Relevant Factual Background.[1]

On October 13, 2015, C & L Group, LLC ("C & L") entered into a contract with Hospital Santa Rosa, Inc. ("HSR") for the construction of the first floor of a hospital in Guayama, Puerto Rico. Compl. ¶ 6; *see also* ECF No. 1-8 (C & L/HSR Contract). That same day, Makko Construction, LLC ("Makko") entered into an identical contract with HSR for construction of the mechanical, electrical, fire protection, and air conditioning system at the same hospital. Compl. ¶

[1] The facts recited herein are derived from: the April 13, 2018 Complaint ("Compl."); appendices attached to the April 13, 2018 Complaint, cited by ECF Number; and the Government's appendices ("Gov't App. 1–20"), filed together with the Government's July 12, 2018 Motion To Dismiss.

7; *see also* ECF No. 1-9 (Makko/HSR Contract). Both Contracts required approval from the Department of Agriculture, Rural Development ("Rural Development"), in the form of "Concurrences," prior to becoming effective, since they were "expected to be funded in part with funds from [] Rural Development." ECF Nos. 1-8 at 25, 1-9 at 26. The Contracts specifically stated that "[n]either the United States nor any of its departments, agencies, or employees is or will be a party to this CONTRACT or any SUBCONTRACT." ECF Nos. 1-8 at 25, 1-9 at 26. The Contracts also included a clause that allowed HSR to, "without cause and without prejudice to any other right or remedy, elect to abandon the PROJECT and terminate the CONTRACT. In such case the CONTRACTOR shall be paid for all WORK executed and any expense sustained plus reasonable profit." ECF Nos. 1-8 at 15, 1-9 at 16.

On June 23, 2016, Rural Development's Community Programs Director sent a letter to Makko confirming that "Rural Development's subject funds [were] reserved" and that "[c]ontract payments are approved through certifications and disbursed from the agency's accounting system." ECF No. 1-1 at 1.

On July 12, 2016, the State Director of Rural Development signed the required "Concurrences" that represented: "As lender or insurer of funds to defray the costs of this contract, and without liability for any payments thereunder, Rural Development . . . hereby concurs in the award of this CONTRACT[.]" ECF Nos. 1-8 at 32, 1-9 at 33.

Between August 17, 2016 and December 13, 2016, Rural Development issued five payments to HSR to pay for work that was completed by C & L and Makko. Gov't App. 1–20. HSR also submitted payment certifications for each of these payments. Gov't App. 1–20.

On November 14, 2016, HSR filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Puerto Rico ("Bankruptcy Court"). Compl. ¶ 10. On December 15, 2016, HSR exercised its Chapter 11 right to reject[2] the Contracts, noting that the "construction is being financed by Rural Development." ECF No. 1-2 at 1. On January 3, 2017, the Bankruptcy Court granted HSR's request to reject the Contracts. ECF No. 1-3.

On March 1, 2017, C & L and Makko each filed a proof of claim against HSR; C & L requested payment in the amount of $334,171.95 and Makko requested $190,736.98. Compl. ¶ 12; *see also* ECF Nos. 1-4, 1-5.

## II. Procedural History.

On April 13, 2018, C & L and Makko (hereafter "Plaintiffs") filed a Complaint in the United States Court of Federal Claims for payment of $334,171.95, plus interest, and $190,736.98, plus interest, from Rural Development. ECF No. 1.

[2] 11 U.S.C. § 365 provides, in pertinent part, that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

On June 1, 2018, the Government filed an Unopposed Motion For An Enlargement of Time to respond to the April 13, 2018 Complaint. ECF No. 5. On June 4, 2018, the court granted the June 1, 2018 Unopposed Motion. ECF No. 6.

On July 12, 2018, the Government filed a Motion To Dismiss ("Gov't Mot."). ECF No. 7.

On August 3, 2018, Plaintiffs filed a Response To The Government's Motion To Dismiss ("Pls. Resp."). ECF No. 8.

On August 17, 2018, the Government filed a Reply In Support Of Its Motion To Dismiss ("Gov't Reply"). ECF No. 9.

## III. Discussion.

### A. Subject Matter Jurisdiction.

Subject matter jurisdiction is a threshold issue that a court must determine at the outset of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

The Tucker Act authorizes the United States Court of Federal Claims with jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not "create[] substantive rights." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). Instead, the Tucker Act is a "jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)." *Id.*

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"). "The other source of law need not explicitly provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Navajo Nation*, 556 U.S. at 1552 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)). "This 'fair interpretation' rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity." *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (citations omitted).

### B. Standard of Review.

Rule 12(b)(1) of the United States Court of Federal Claims ("RCFC") authorizes a party to file a motion asserting a "lack of subject-matter jurisdiction." RCFC 12(b)(1). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted

factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018) (citations omitted).

**C. The Government's July 12, 2018 Motion To Dismiss.**

**1. The April 13, 2018 Complaint.**

The April 13, 2018 Complaint alleges that the court "has jurisdiction over this cause under 28 U.S.C. § 1491, since it consists of a monetary claim against the United States founded upon an express or implied contract therewith." Compl. ¶ 4. Specifically, the April 13, 2018 Complaint alleges that: (1) Plaintiffs entered into Contracts with HSR, "with the express appearance and concurrence of . . . Rural Development, as lender or insurer of funds to defray the costs of the [C]ontract[s]" (Compl. ¶¶ 6–7); (2) "[o]ne of the principal factors and considerations for [Plaintiffs] entering into their [C]ontracts with HSR was the assurance and guarantee that federal funds had been dedicated for the construction of the [h]ospital[,]" evidenced by the June 23, 2016 letter (Compl. ¶¶ 8–9); and (3) the money owed to Plaintiffs, in the amount of $334,171.95, plus interest, and $190,736.98, plus interest, respectively, was "guaranteed by Rural [Development], as per [Rural Development's Community Programs Director's] letter of June 23, 2016 . . . and as concurred to thereby in their contracts with HSR" (Compl. ¶¶ 15, 17).

**2. The Government's Argument.**

The Government argues that the April 13, 2018 Complaint should be dismissed, pursuant to RCFC 12(b)(1), because "[P]laintiffs' lack privity of contract with the United States." Gov't Mot. at 2. Plaintiffs entered into contracts with HSR, to which Rural Development concurred as lender of funds to HSR. Gov't Mot. at 6. This approval, however, did not bind Rural Development, because the Contracts expressly state that "[n]either the United States nor any of its departments, agencies, or employees is or will be a party to this CONTRACT[.]" ECF Nos. 1-8 at 25, 1-9 at 26. The receipt of payments from Rural Development through HSR, after completion of payment certifications, "does not create a contractual relationship where one does not exist." Gov't Mot. at 7.

**3. Plaintiffs' Response.**

Plaintiffs' respond that Rural Development "expressly appeared in, and concurred with, the respective [C]ontracts between each Plaintiff and HSR, as lender and insurer of the funds to defray the costs of such [C]ontracts." Pls. Resp. at 5. The Contracts consisted of standard form contracts provided by Rural Development, with all the terms and conditions, and Rural Development had the right to veto the Contracts by not approving them. Pls. Resp. at 5, 7. Therefore, based on Rural Development's "degree of participation, interest and control in Plaintiffs[' C]ontracts with HSR, the only conclusion that can be reached is that [Rural Development] is a party thereto." Pls. Resp. at 7. The June 23, 2016 letter from Rural Development's Community Programs Director provided Plaintiffs with "additional reliance on Rural [Development]'s participation in the [C]ontracts" and further demonstrates the degree of Rural Development's participation as a party to the Contracts. Pls. Resp. at 7.

In addition, implied-in-fact contracts existed by virtue of the parties' conduct. Pls. Resp. at 8. As the June 23, 2016 letter from Rural Development's Community Programs Director

indicates, if "Plaintiffs performed the work that they were contracted for, [Rural Development] would guarantee its payment." Pls. Resp. at 10. Plaintiffs, "relying on [Rural Development's] representations and promises, . . . entered into contracts they otherwise would not have entered into." Pls. Resp. at 12.

**4. The Government's Reply.**

The Government replies that concurrence with the terms of a contract between private parties does not establish privity. Gov't Reply at 2. The fact that a contract has terms and conditions or standard forms established by Rural Development also does not establish privity. Gov't Reply at 2–3. The June 23, 2016 letter from Rural Development's Community Programs Director represented only that "project funds [were] reserved and "payments [would be] approved through certifications[,]" so any reliance was misplaced. ECF No. 1-1 at 1.

As to Plaintiffs' argument that implied contracts exist, there was never a meeting of the minds, because Rural Development disclaimed any responsibility under the Contracts and declined liability for payments made under the Contracts. ECF Nos. 1-8 at 25, 32, 1-9 at 26, 33. In addition, Plaintiffs "confirmed their understanding that they had not entered into any implied contracts with [Rural Development,]" by signing the Contracts that included these disclaimers. Gov't Reply at 5.

**5. The Court's Resolution.**

Under the Tucker Act, the United States Court of Federal Claims has jurisdiction over claims based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *see also Cinega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998). "To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the [G]overnment." *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990); *see also Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984) ("The [G]overnment consents to be sued only by those with whom it has privity of contract[.]"). A court does "not lightly presume that the [G]overnment's actions give rise to contractual obligations when the [G]overnment is not a named party to the contract in dispute." *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1350 (Fed. Cir. 2016).

Without an express contractual relationship, a plaintiff only "can establish privity of contract through an implied-in-fact contract with the United States[.]" *Maher v. United States*, 314 F.3d 600, 603 n.1 (Fed. Cir. 2002) (citing *First Hartford Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999)). "An implied-in-fact contract is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Id.* at 606 (quoting *Hercules, Inc. v. United States*, 516 U.S. 417, 424, (1996)); *see also Ransom*, 900 F.2d at 244 ("Although the legal consequences of express and implied-in-fact contracts are the same, an implied-in-fact contract is inferred from the parties' conduct."). An implied-in-fact contract has the same "required elements for contract formation [as an express contract]—'a mutual intent to contract including an offer, an acceptance, and consideration[.]'" *Maher*, 314 F.3d at 606 (quoting *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).

In this case, the April 13, 2018 Complaint alleges that the court has jurisdiction to adjudicate Plaintiffs' claim for unpaid expenses incurred under either express or implied contracts with Rural Development. Compl. ¶ 4. The April 13, 2018 Complaint, however, fails to allege facts sufficient to show that Plaintiffs were in privity of contract with Rural Development. The parties to the October 15, 2015 Contracts were Plaintiffs and HSR; Rural Development was not a party to the Contracts, as further evidenced by the caveat stating that "[n]either the United States nor any of its departments, agencies, or employees is or will be a party to this CONTRACT[.]" ECF Nos. 1-8 at 25, 1-9 at 26. Nor do the July 12, 2016 "Concurrences" establish privity with Rural Development, because they do not displace the October 15, 2015 Contracts' express language to the contrary that plainly state Rural Development assumed no liability nor guaranteed any payment due for work performed under the October 15, 2015 Contracts. ECF Nos. 1-8 at 32, 1-9 at 33; *see National Leased Hous. Ass'n v. United States*, 105 F.3d 1423, 1436 (Fed. Cir. 1997) ("[Liability, if any, within an agency's discretion] is not the type of direct, unavoidable contractual liability necessary to trigger a waiver of sovereign immunity, the inevitable result of finding privity of contract."). In sum, the October 15, 2015 Contracts "simply do not show privity of contract" between Plaintiffs and Rural Development. *Id.* at 1243; *see also Pac. Gas*, 838 F.3d at 1351 (holding that the Government was not in privity of contract with the plaintiffs, in part, because "[n]o parties other than the individual participant and the relevant exchange were listed on any contract").

The April 13, 2018 Complaint also fails to allege facts sufficient to establish an implied-in-fact contract, because it fails to allege any facts to support a "meeting of minds" between Plaintiffs and Rural Development. *See Maher*, 314 F.3d at 606. The express language in the October 15, 2015 Contracts and July 12, 2016 "Concurrences" affirmatively states that Rural Development did not intend to contract with Plaintiffs. ECF Nos. 1-8 at 25, 32, 1-9 at 26, 33; *see Carter v. United States*, 98 Fed. Cl. 632, 636 (Fed. Cl. 2011) ("A court will not . . . imply an agreement between two parties when there was none, nor can a court imply privity when there was no meeting of the minds between the particular parties."). And, the confirmation by the Community Programs Director at Rural Development that "Rural Development's subject funds [were] reserved" and that "[c]ontract payments [would be] approved through certifications and disbursed from the agency's accounting system" does not allege an intent to contract. ECF No. 1-1 at 1.

To the extent that the April 13, 2018 Complaint can be read to allege the creation of implied-in-fact unilateral contracts, the correspondence from the Community Programs Director made no promise of payment. ECF No. 1-1 at 1; s*ee Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012, 1018 (Fed. Cir. 1996) (holding that a unilateral contract is formed "between the [G]overnment and a private party if promissory words of the former induce significant action by the latter in reliance thereon") (citations omitted). And, to the extent that the April 13, 2018 Complaint can be read to allege a claim of promissory estoppel, the court does not have jurisdiction to adjudicate such a claim. *See Lawndale Restoration Ltd. P'ship v. United States*, 95 Fed. Cl. 498, 506 (Fed. Cl. 2010) ("Promissory estoppel is another name for an implied-in-law contract claim.") (citations omitted); *see also Hercules*, 516 U.S. at 423 (holding that Tucker Act "jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law").

## IV. CONCLUSION.

For these reasons, the court has determined that the April 13, 2018 Complaint does not allege sufficient facts to establish subject matter jurisdiction. Accordingly, the Government's July 12, 2018 Motion To Dismiss is granted. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Senior Judge**